Caption in Compliance with D.N.J. LBR 9004-1(b)

DOUGLAS G. LENEY (DL9012)
ARCHER & GREINER, P.C.
1025 Laurel Oak Road
Voorhees, NJ  08043
Tel: (215) 963-3300
Fax: (215) 963-9999
dleney@archerlaw.com
*Attorneys for Debtor*

| | |
|---|---|
| In re: | Chapter 11 (Subchapter V) |
| FORGOTTEN BOARDWALK BREWING, LLC, | Case No. 24-10327 (JNP) |
| Debtor. | Judge:  Poslusny |

## SUBCHAPTER V DEBTOR'S PLAN OF REORGANIZATION

This Plan of Reorganization is presented to you to inform you of the proposed plan for reorganizing the affairs and assets (the "Plan" or "Plan of Reorganization") of the above-captioned debtor, **Forgotten Boardwalk Brewing, LLC** (the "Debtor"), and to seek your vote to accept the Plan, if applicable.

You are encouraged to carefully review the full text of this document, including all exhibits and attachments, before deciding how to vote on the Plan.  To assist you in your review, please note that a list of definitions and a section of frequently asked questions appear at the end of this document.

**IN ADDITION TO CASTING YOUR VOTE TO ACCEPT OR REJECT THE PLAN, YOU MAY OBJECT TO CONFIRMATION OF THE PLAN. IF YOU WISH TO OBJECT TO CONFIRMATION OF THE PLAN, YOU MUST DO SO BY MAY 13, 2024.**

**YOUR BALLOT STATING HOW YOU ARE VOTING ON THE PLAN MUST BE RETURNED BY MAY 13, 2024.  THE BALLOT MUST BE MAILED TO THE FOLLOWING ADDRESS:**

**Archer & Greiner, P.C.
Attn:  Douglas G. Leney, Esq.
1025 Laurel Oak Road
Voorhees, NJ  08043**

228702286 v1

**A HEARING ON THE CONFIRMATION OF THE PLAN WILL BE
SCHEDULED BY THE BANKRUPTCY COURT.  A SEPARATE NOTICE
OF SUCH HEARING WILL BE SENT TO YOU ONCE IT HAS BEEN
SCHEDULED.**

**YOUR RIGHTS MAY BE AFFECTED BY THIS PLAN.  YOU SHOULD
CONSIDER DISCUSSING THIS DOCUMENT WITH AN ATTORNEY.**

Dated: Voorhees, New Jersey   ARCHER & GREINER, P.C.
   April 11, 2024

           */s/ Douglas G. Leney*
          Douglas G. Leney, Esquire
          1025 Laurel Oak Road
          Voorhees, NJ 08043
          Tel:  (215) 963-3300
          Fax:  (215) 963-9999
          dleney@archerlaw.com

# TABLE OF CONTENTS

Page

**ARTICLE 1 HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTOR. ..............3**

    **1.1.**    **Nature and History of the Debtor's Business. ....................................................3**

    **1.2.**    **Filing of the Debtor's Chapter 11 Case. ..........................................................3**

    **1.3.**    **Legal Structure and Ownership. ......................................................................3**

    **1.4.**    **Debtor's Assets. ................................................................................................3**

    **1.5.**    **Debtor's Liabilities............................................................................................3**

    **1.6.**    **Current and Historical Financial Conditions..................................................4**

    **1.7.**    **Events Leading to the Filing of the Bankruptcy Case. ...................................4**

    **1.8.**    **Significant Events During the Bankruptcy Case. ...........................................4**

    **1.9.**    **Projected Recovery of Avoidable Transfers....................................................5**

**ARTICLE 2 THE PLAN. ...........................................................................................................6**

    **2.1.**    **Unclassified Claims. .........................................................................................6**

        **A.**  **Administrative Expenses ..........................................................................6**

        **B.**  **Priority Tax Claims. .................................................................................7**

    **2.2.**    **Classes of Claims and Equity Interests. ..........................................................8**

        **A.**  **Classes of Secured Claims .......................................................................8**

        **B.**  **Classes of Priority Unsecured Claims. ....................................................9**

        **C.**  **Class[es]of General Unsecured Claims. ..................................................9**

        **D.**  **Class[es] of Equity Interest Holders.......................................................10**

    **2.3.**    **Estimated Number and Amount of Claims Objections...................................10**

    **2.4.**    **Treatment of Executory Contracts and Unexpired Leases............................11**

    **2.5.**    **Means for Implementation of the Plan. ..........................................................11**

    **2.6.**    **Payments. .........................................................................................................12**

228702286 v1

**2.7.**     **Post-Confirmation Management.** ...................................................................12

**2.8.**     **Tax Consequences of the Plan.** ...........................................................12

**ARTICLE 3 FEASIBILITY OF PLAN** ...............................................................12

**3.1.**     **Ability to Fund Plan** ..........................................................................12

**ARTICLE 4 LIQUIDATION ANALYSIS.** .........................................................13

**ARTICLE 5 DISCHARGE OF DEBTOR / CODEBTOR INJUNCTION** ...........13

**5.1.**     **11 U.S.C. § 1141(d)(3) Not Applicable** ...............................................13

**5.2.**     **Codebtor Injunction** ..........................................................................13

**ARTICLE 6 GENERAL PROVISIONS.** ............................................................14

**6.1.**     **Title to Assets.** ..................................................................................14

**6.2.**     **Binding Effect.** ..................................................................................15

**6.3.**     **Severability.** ......................................................................................15

**6.4.**     **Retention of Jurisdiction by the Bankruptcy Court.** ...........................15

**6.5.**     **Captions.** ...........................................................................................15

**6.6.**     **Modification of Plan.** ........................................................................15

**6.7.**     **Final Decree.** ....................................................................................16

**ARTICLE 7 ATTACHMENTS.** ........................................................................17

**ARTICLE 8 FREQUENTLY ASKED QUESTIONS.** .........................................18

**ARTICLE 9 DEFINITIONS** .............................................................................20

**9.1.** ...............................................................................................................20

**9.1.**     **Administrative Claimant** ...................................................................20

**9.2.**     **Administrative Expense** .....................................................................20

**9.3.**     **Administrative Tax Claim** ..................................................................20

**9.4.**     **Allowed Claim** ..................................................................................20

**9.5.**     **Allowed Priority Tax Claim** ..............................................................20

228702286 v1

| | | |
|---|---|---|
| 9.6. | **Allowed Secured Claim** | 20 |
| 9.7. | **Allowed Unsecured Claim** | 20 |
| 9.8. | **Bankruptcy Code or Code** | 21 |
| 9.9. | **Bankruptcy Court** | 21 |
| 9.10. | **Bankruptcy Rules** | 21 |
| 9.11. | **Cash** | 21 |
| 9.12. | **Chapter 11 Case** | 21 |
| 9.13. | **Claim** | 21 |
| 9.14. | **Class** | 21 |
| 9.15. | **Confirmation** | 21 |
| 9.16. | **Confirmation Date** | 21 |
| 9.17. | **Confirmation Hearing** | 22 |
| 9.18. | **Confirmation Order** | 22 |
| 9.19. | **Creditor** | 22 |
| 9.20. | **Debtor and Debtor-in-Possession** | 22 |
| 9.21. | **Disputed Claim** | 22 |
| 9.22. | **Distributions** | 22 |
| 9.23. | **Effective Date** | 22 |
| 9.24. | **Equity Interest** | 22 |
| 9.25. | **Executory Contracts** | 22 |
| 9.26. | **Final Order** | 22 |
| 9.27. | **IRC** | 23 |
| 9.28. | **Petition Date** | 23 |
| 9.29. | **Plan** | 23 |
| 9.30. | **Priority Tax Claim** | 23 |

228702286 v1

**9.31.** **Reorganized Debtor** ........................................................................................**23**

**9.32.** **Schedules** ...............................................................................................................**23**

**9.33.** **Secured Creditor** ..................................................................................................**23**

**9.34.** **Trustee** ...................................................................................................................**23**

**9.35.** **Unsecured Creditor** ..............................................................................................**23**

228702286 v1

## <u>SUMMARY OF THE PLAN AND DISTRIBUTIONS TO CREDITORS</u>

Forgotten Boardwalk Brewing, LLC, as the debtor and debtor-in-possession in the above-captioned chapter 11 case, subchapter V, hereby files this proposed Plan of Reorganization pursuant to applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Bankruptcy Rules, including, without limitation, 11 U.S.C. §§ 1189-1191.

The Debtor is a woman-owned and led craft brewery and beverage manufacturer operating since 2012 with a "Limited Brewery License" in accordance with <u>N.J. Rev. Stat.</u> §§ 33:1-1, *et seq.* (2022) ("Intoxicating Liquors"). Since September 2014, the Debtor has maintained a brewing, packaging, and distributing warehouse as well as a tasting room, which has served as a pivotal gathering spot for the local and surrounding community, as well as driving traffic to the facility from other states, regions, and countries. Producing a variety of craft microbrews, the Debtor has worked directly with the state Alcoholic Beverage Control ("<u>ABC</u>") to draft new language which allowed the usage of "malt beverage substitutes" to create the first hard seltzer produced in the State of New Jersey in 2019. The Debtor has continued through its 10 years of business operations to craft a well-rounded beverage portfolio that includes ready-to-drink coffees, craft beer, craft hard seltzer, and craft hard teas, as well as exciting non-alcoholic offerings.

Since 2014, the Debtor operated from its tasting room and brewing facility located at 1940 Olney Avenue, Suite #100, Cherry Hill, New Jersey (the "<u>Cherry Hill Premises</u>"). The term of the Debtor's lease for the Cherry Hill Premises ended on February 29, 2024, and – despite its best efforts to negotiate an extension or new lease with respect to the Cherry Hill Premises – the Debtor was unable to do so. The Debtor operated post-petition and vacated the Cherry Hill premises as of February 29, 2024 in accordance with the lease.

The Debtor's plan, as more fully detailed herein, is to partner with the Barnegat Oyster Collective (the "<u>BOC</u>"), located in Barnegat, New Jersey. The BOC is a commercial aquaculture farm, and in addition to the permits the brewing industry has been able to be granted, the State of NJ also passed bipartisan legislation recognizing aquaculture as eligible under the Right to Farm Act, where such farms may conduct related educational activities and direct market the output of their farm. The BOC began to direct-market its crops while providing educational seminars to visitors. The Debtor has previously participated in "pop-up" beer garden events with BOC, during which the Debtor and BOC were able to educate and discuss the importance of oysters in the community, how oysters and beer have always worked together, including using oysters as an ingredient in beer for centuries, as well as how the Debtor has specifically used oysters from the BOC as an ingredient in multiple beers throughout its portfolio.

The BOC has space within its facility that is available for the Debtor to continue its operations post-confirmation through a projected multi-phase plan, as follows:

<u>Phase I</u>: There is currently existing inventory on-site at the Cherry Hill Premises that can be used to generate cash in this first phase. The initial focus would be to first bond the warehouse located at BOC, which would allow the legal transfer of inventory from the Cherry Hill Premises to a legally bonded cold storage facility located within the BOC's premises. The Debtor would then plan certain off-site events under "Limited Brewery Offsite Event Permits" –

1

available to the Debtor through its existing ABC license – at 483 E. Bay Avenue in Barnegat, New Jersey, and would be substantially identical to those pop-up beer gardens the Debtor has hosted there in the past, allowing the sale of the existing inventory, and bringing in short-term revenue for the Debtor.

Phase II:  The second phase of the plan includes bringing back the Debtor's full distribution footprint.  While the Debtor still intends that its larger-scale equipment will be auctioned and sold by CUNJ, the Debtor will utilize certain smaller-scale equipment (itemized on **Exhibit A** hereto), and will secure contract brewing partners for this phase.  Using existing infrastructure from other breweries in New Jersey, the Debtor will be able to manufacture, package, and distribute its successful brands and bring them back to the bar/restaurant/liquor store level.  Having multiple contract partners will also assist in manufacturing the correct forecasted amounts due to flexibilities found in smaller batch sizes.  At the same time, the Debtor will realize reduced overall overhead, payroll, and storage costs as well, increasing flexibility of manufacturing volume across all channels without any additional costs or equipment needed on-site.

Phase III:  The last projected phase of the plan would include installing a smaller scale brewery at the new location, using the smaller-scale equipment set forth on **Exhibit A**.  The Debtor will utilize one-barrel brewing system on-site at the BOC, and file a "place-to-place transfer" of its Limited Brewing License in order to keep all of its operations active and licensed in the state of New Jersey in accordance with prevailing ABC laws.  This will allow for tasting room privileges, generating revenue from sales of draft beer on-site as well as packaged goods during normal operating hours.  The Debtor intends to brew and serve many of its formerly flagship beers, as well as creating and brewing new location-centric beers, utilizing oysters as an ingredient.  The new facility and partnership with BOC will allow the Debtor to leverage its brand name and bring in past and existing customers of its products, as well as establish new customers through a new geographic and aquaculture-centric location.

Distributions to various Classes of creditors holding Allowed Claims is provided for in detail in Sections 2.1 and 2.2 herein.  The Debtor is pleased to be able to propose this Plan – *which provides for 100% payment of all Allowed Claims* – as part of its reorganization efforts.

# ARTICLE 1
## HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTOR.

### 1.1.    Nature and History of the Debtor's Business.

The Debtor is a New Jersey limited liability company which, prior to the commencement of this bankruptcy case, was engaged in formulating, brewing, packaging, and selling/distributing craft beverages, including ready-to-drink coffees, craft beer, craft hard seltzer, and craft hard teas, as well as exciting non-alcoholic offerings, and has aggregate noncontingent liquidated secured and unsecured debts as of the Petition Date (defined hereinbelow) in an amount not more than $7,500,000 (excluding debts owed to one or more affiliates or insiders).

### 1.2.    Filing of the Debtor's Chapter 11 Case.

On January 12, 2024 (the "Petition Date"), the Debtor filed a voluntary petition for relief under the Bankruptcy Code.  The Chapter 11 Case is pending in the Bankruptcy Court in Camden, New Jersey.

### 1.3.    Legal Structure and Ownership.

The Debtor is a two-member New Jersey limited liability company.  The membership interests are held by Jaime Queli (51%) ("Ms. Queli") and Seth Dolled (49%) ("Mr. Dolled").

### 1.4.    Debtor's Assets.

The Debtor's asset base is not complicated.  It consists principally of certain brewing equipment, machinery, and supplies (fully encumbered), as well as inventory, merchandise, and a relatively small amount of cash on hand, as well as accounts receivable, as more fully set forth on the Debtor's Schedule A/B.

### 1.5.    Debtor's Liabilities.

CUNJ is the Debtor's senior secured creditor, holding a blanket first lien on substantially all assets of the Debtor.  The SBA holds a second lien on substantially all assets of the Debtor; however, the Debtor believes that based upon the value of the collateral base, the SBA is wholly unsecured.  As of the Petition Date, CUNJ's claim was approximately $275,000, and the SBA's claim was approximately $511,000.  The Debtor remains current on all post-petition obligations.

The universe of general unsecured claims against the Debtor is relatively small.  Pursuant to the Debtor's schedules, the Debtor has just over $300,000 in general unsecured claims against it (exclusive of the SBA's claim).  General unsecured claims filed in the Bankruptcy Case by the March 22, 2024 non-governmental bar date total approximately $281,000, closely resembling the total amount scheduled.  There is also $12,767.41 in priority tax claims which have been filed by state and federal taxing authorities.

### 1.6. Current and Historical Financial Conditions.

The Debtor maintains Quickbooks-based accounting and bookkeeping records internally, and engages with outside accountants as and when necessary. Copies of the Debtor's (i) 2023 balance sheet, (ii) 2023 profit and loss statement, (iii) 2023 cash flow statement, and (iv) 2022 federal tax return were attached to the Debtor's Chapter 11 Petition and initial filings [D.I. 1]. The Debtor is current in filing all Monthly Operating Reports and has provided all information and documents requested by the Office of the United States Trustee (the "UST").

### 1.7. Events Leading to the Filing of the Bankruptcy Case.

The Debtor is a woman-owned and led craft brewery and beverage manufacturer operating since 2012 with a "Limited Brewery License" in accordance with N.J. Rev. Stat. §§ 33:1-1, *et seq.* (2022) ("Intoxicating Liquors"). Since September 2014, the Debtor has maintained a brewing, packaging, and distributing warehouse as well as a tasting room, which has served as a pivotal gathering spot for the local and surrounding community, as well as driving traffic to the facility from other states, regions, and countries. Producing a variety of craft microbrews, the Debtor has worked directly with the state ABC to draft new language which allowed the usage of "malt beverage substitutes" to create the first hard seltzer produced in the State of New Jersey in 2019. The Debtor continued through its 10 years of business operations to craft a well-rounded beverage portfolio that includes ready-to-drink coffees, craft beer, craft hard seltzer, and craft hard teas, as well as exciting non-alcoholic offerings.

Since 2014, the Debtor operated from its tasting room and brewing facility located at the Cherry Hill Premises. The term of the Debtor's lease for the Cherry Hill Premises was scheduled to end on February 29, 2024, and – despite its best efforts to negotiate an extension or new lease with respect to the Cherry Hill Premises – the Debtor was unable to do so. However, prior to the end of the lease term, a disagreement arose between the Debtor and its landlord, Cherry Umbrella, LLC (the "Landlord"), over CAM and other related charges, ultimately leading to the Landlord commencing an action against the Debtor in the Superior Court of New Jersey, Camden County, Landlord/Tenant Court, captioned as *Cherry Umbrella, LLC v. Forgotten Boardwalk Brewing*, LLC, Docket No. CAM-LT-007203-23 (the "L/T Action"). Facing the prospect of potential eviction from the Cherry Hill Premises at some point in January 2024, together with declining overall macroeconomic conditions within the craft brewing industry as a whole, the Debtor commenced this Chapter 11 Case on the Petition Date, seeking to operate through at least the end of February 2024, and to explore its options for reorganization thereafter.

### 1.8. Significant Events During the Bankruptcy Case.

- On January 19, 2024, Douglas S. Stanger was appointed as the Subchapter V Trustee [D.I. 14];

- On January 31, 2024, the Bankruptcy Court approved the Debtor's use of cash collateral for a first interim period ending February 29, 2024 [D.I. 23];

- On February 5, 2024, the Bankruptcy Court approved the retention of Archer & Greiner, P.C., as bankruptcy counsel to the Debtor, *nunc pro tunc* to the Petition Date [D.I. 30];

- Pursuant to 11 U.S.C. § 341(a), a meeting of creditors with respect to the Debtor was held and concluded on February 20, 2023;

- On March 5, 2024, the Bankruptcy Court granted stay relief to CUNJ with respect to substantially all of the Debtor's assets on-site at the Cherry Hill Premises in order to market, auction, and sell such assets [D.I. 46]; and

- On March 20, 2024, the Bankruptcy Court approved the Debtor's use of cash collateral for a second interim period ending April 11, 2024 [D.I. 48].

**1.9.    Projected Recovery of Avoidable Transfers.**

The Debtor has not conducted a formal analysis of potentially avoidable transfers, but has disclosed all relevant transfers in the Statement of Financial Affairs filed with the Court. The Debtor does not anticipate any recoveries on account of pre-petition transfers on the basis that such transfers are allegedly avoidable.

228702286 v1

# ARTICLE 2
# THE PLAN.

The Debtor's Plan must describe how its Creditors will be paid. Certain Claims are entitled to specific treatment under the Bankruptcy Code and are not placed in a class for purpose of payment. For example, Administrative Expenses and Priority Tax Claims (if any) are not classified.

As required by the Code, the Plan places Claims and Equity Interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of Claims or Equity Interests is impaired or unimpaired. A Claim or Equity Interest can be impaired if the Plan alters the legal, equitable or contractual rights to which the Claimants are otherwise entitled. If the Plan is confirmed, each Creditor's recovery is limited to the amount provided in the Plan.

Only Creditors in classes that are impaired may vote on whether to accept or reject the Plan, and only Creditors holding Allowed Claims may vote. A class accepts the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the Allowed Claims that actually vote, vote in favor of the Plan. Also, a class of Equity Interest holders accepts the Plan when at least two-thirds (2/3) in amount of the allowed Equity Interest holders that actually vote, vote in favor of the Plan. A class that is not impaired is deemed to accept the Plan.

## 2.1. Unclassified Claims.

Certain types of Claims are automatically entitled to specific treatment under the Code. For example, Administrative Expenses and Priority Tax Claims are not classified. They are not considered impaired, and holders of such Claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, the Plan does not place the following Claims in any class:

A.    Administrative Expenses

The Debtor must pay all Administrative Expenses in full. If an Administrative Expense is disputed, the Bankruptcy Court must determine the validity and amount of the Administrative Expense, or in other words, "allow" the Administrative Expense. Any Administrative Expense that is undisputed and is due and owing on the Confirmation Date must be paid in accordance with this Plan, or upon such other terms as agreed upon by the Debtor and the Administrative Claimant or court order. If the Administrative Expense is disputed, payment will be made after the Administrative Expense is allowed by the Bankruptcy Court.

There are several types of Administrative Expenses, including the following:

1.    If the Debtor trades in the ordinary course of business following its filing of the Chapter 11 Case, Creditors are entitled to be paid in full for the goods or services provided. This ordinary trade debt incurred by the Debtor after the Petition Date will be paid on an ongoing basis in accordance with the ordinary business practices and terms between the Debtor and its trade Creditors.

2.     If the Debtor received goods it has purchased in the ordinary course of business within 20 days before the Petition Date, the value of the goods received is an Administrative Expense.

3.     Administrative Expenses also include any post-petition fees and expenses allowed to professionals, including the allowed claim of the Trustee for fees and/or reimbursements, and for attorneys and accountants employed upon Bankruptcy Court authority to render services to the Debtor during the course of the Chapter 11 Case.  These fees and expenses must be noticed to Creditors and approved by the Bankruptcy Court prior to payment.

The following chart lists the Debtor's estimated Administrative Expenses, and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Professional fees, as approved by the Bankruptcy Court | $65,000 – $75,000 | After Bankruptcy Court approval, paid in full on the later of (i) the Effective Date; or (ii) within 15 days of entry of such approval order, unless claimant(s) agree to other treatment. |
| Clerk's Office fees | $0 - $1,000.00 | Paid in full on the Effective Date. |
| Trustee | $5,000 - $10,000.00 | Upon application under § 330 and after Bankruptcy Court approval, paid in full on the later of (i) the Effective Date; or (ii) within 15 days of entry of such approval order. |
| **TOTAL** | **$70,000 - $86,000** | |

B.     Priority Tax Claims.

Priority Tax Claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code.  Unless the holder of such a § 507(a)(8) Priority Tax Claim agrees otherwise, it must receive the present value of such Claim, in regular installments paid over a period not exceeding 5 years from the order of relief.

228702286 v1

Each holder of a Priority Tax Claim will be paid as set forth in the chart below:

| Name of Taxing Authority and Type of Tax | Estimated Amount Owed | Date of Assessment | Treatment |
|---|---|---|---|
| Internal Revenue Service | $11,767.41 | 3/31/2024 | Paid in full on the Effective Date. |
| State of NJ, Div. of Taxation | $1,000.00 | 12/31/2023 | Paid in full on the Effective Date. |

**2.2. Classes of Claims and Equity Interests.**

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

A. Classes of Secured Claims

Allowed Secured Claims are Claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured Claims under § 506 of the Code. If the value of the collateral or setoffs securing the Creditor's Claim is less than the amount of the Creditor's Allowed Claim, the deficiency will be classified as a general unsecured Claim. In addition, certain claims secured only by the debtor's principal residence, may require different treatment pursuant to § 1190(3) of the Code as set forth below, if applicable.

The following chart lists all classes containing the Debtor's secured prepetition Claims and their proposed treatment under the Plan:

| Class # | Description | Insider? (Yes or No) | Impairment | Treatment |
|---|---|---|---|---|
| 1 | *Secured claim of*: Credit Union of New Jersey<br><br>Collateral description: All Business Assets of Debtor (*first lien*)<br><br>Allowed Secured Amount: Approx. $275,000 Arrearage: $0 | No | Unimpaired | Claim to be reduced by amount of proceeds realized by creditor upon auction sale of equipment. Balance of claim to be paid in 36 equal monthly installments at (Prime + 2.75%) variable interest rate. |

| 2 | *Secured claim of*:<br>U.S. Small Bus. Administration<br><br>Collateral description:<br>All Business Assets of Debtor<br>(*second lien*)<br><br>Allowed Secured Amount:<br>Approx.         $0<br>Arrearage:      $0 | No | Impaired | Claim to be reclassified as wholly unsecured. *Pro rata* recovery from all projected disposable income of the Debtor realized during 36-month Plan repayment period. Based upon the Debtor's 36-month projections, holders of Allowed Claims to receive 100%. |

B.      Classes of Priority Unsecured Claims.

Certain priority Claims that are referred to in §§ 507(a)(1), (4), (5), (6), and (7) of the Code are required to be placed in classes. The Code requires that each holder of such a Claim receive cash on the Effective Date of the Plan equal to the allowed amount of such Claim. However, a class of holders of such Claims may vote to accept different treatment.

The following chart lists all classes containing Claims under §§ 507(a)(1), (4), (5), (6), and (a)(7) of the Code and their proposed treatment under the Plan:

| Class # | Description | Impairment | Treatment |
|---------|-------------|------------|-----------|
| | NONE | | |

C.      Class[es]of General Unsecured Claims.

General unsecured Claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code. The following represents the classes of general unsecured Claims and their proposed treatment under the Plan:

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| 3 | Holders of Allowed General Unsecured Claims (and not subject to any pending Claim objection) as of the Effective Date | No | *Pro rata* recovery from all projected disposable income of the Debtor realized during 36-month Plan repayment period. Based upon the Debtor's 36-month projections, holders of Allowed Claims to receive 100%. |

D.    Class[es] of Equity Interest Holders.

Equity Interest holders are parties who hold an ownership interest (*i.e.*, equity interest) in the Debtor.  In a corporation, entities holding preferred or common stock are Equity Interest holders.  In a partnership, Equity Interest holders include both general and limited partners.  In a limited liability company, the Equity Interest holders are the members.  Finally, with respect to an individual who is a debtor, the Debtor is the Equity Interest holder.

The following chart sets forth the Plan's proposed treatment of the class[es] of Equity Interest holders:

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| 4 | Equity Interest Holders (the Debtor) | Yes | All property of the Estate shall re-vest in the Debtor upon grant of discharge under § 1192 of the Code. |

### 2.3.    **Estimated Number and Amount of Claims Objections.**

The Debtor may object to the amount or validity of any Claim by the later of: (i) within 60 days of the Confirmation Date, or (ii) within 30 days of the filing of the subject Claim(s), by filing an objection with the Bankruptcy Court and serving a copy of the objection on the holder of the Claim.  The Claim objected to will be treated as a Disputed Claim under the Plan.  If and when a Disputed Claim is finally resolved by the allowance of the Claim in whole or in part, the Debtor will pay the Allowed Claim in accordance with the Plan.  Unless otherwise specifically addressed herein, the Debtor reserves all rights with respect to any Claim scheduled or filed in this Chapter 11 Case.

| Class | Number of Claims Objected To | Amount of Claims Objected To |
|---|---|---|
| TBD | TBD | TBD |

### 2.4.   Treatment of Executory Contracts and Unexpired Leases.

Executory Contracts are contracts where significant performance of the contract remains for both the Debtor and another party to the contract. The Debtor has the right to reject, assume (i.e. accept), or assume and assign these types of contracts to another party, subject to the Bankruptcy Court's approval. The paragraphs below explain the Debtor's intentions regarding its Executory Contracts (which includes its unexpired leases) and the impact such intentions would have on the other parties to the contracts.

Check all that apply:

[  ]   Assumption of All Executory Contracts and Unexpired Leases

[X]   Rejection of All Executory Contracts and Unexpired Leases

**As of the Effective Date, all prepetition Executory Contracts and Unexpired Leases to which the Debtor is a party shall be deemed REJECTED.**

[  ]   Debtor Not Party to Any Executory Contracts or Unexpired Leases

### 2.5.   Means for Implementation of the Plan.

During Phase I, current inventory will be depleted and sold on an ongoing basis, generating revenue while the Debtor works toward Phase II, as opposed to discarding such inventory in a lawful and legal manner under ABC laws. This also results in immediate brand awareness at the new BOC location, allowing for immediate brand building, and customer loyalty and retention from day one.

Using multiple contract partners throughout the state would allow for an easy transition of bringing the Debtor's distribution footprint back to the more than 1,000 accounts located throughout the region. The flexibility provided in multiple contract partners allows for the right batch size per beer brand. Projected rent is anticipated at a mere $18,000/year (nearly 90% savings from the Cherry Hill Premises), and payroll cost is estimated to be cut nearly in half (approximately $150,000/year vs. prepetition cost of $300,000/year). BOC also maintains its own fleet of delivery vehicles which deliver oysters to restaurants and bars, and the Debtor will be able to leverage those for beer distribution as well. The Debtor will effectively be able to eliminate its own vehicle and associated costs as a result.

The new facility allows the opportunity for the Debtor to "grow down" in accordance with the changes in the craft beer industry. The Debtor will be able to reduce its most major expenses including rent and payroll, all while being able to achieve significant revenue numbers similar to those that drove the Cherry Hill location for the past decade, with a projected year over year increase. This new location with the BOC would be the first of its kind in all of New Jersey, hopefully providing a competitive edge to the Debtor going forward.

On Confirmation of the Plan, all property of the Debtor, tangible and intangible, including, without limitation, licenses, furniture, fixtures and equipment, will revert, free and

clear of all Claims and Equitable Interests except as provided in the Plan, to the Debtor. The Debtor expects to have sufficient cash on hand through the Funding Entities in order to make the payments required on the Effective Date.

**2.6.**     <u>**Payments.**</u>

If the Plan is confirmed under §1191(a), payments to Creditors provided for in the Plan will be made first from any funds held by the Trustee pursuant to §1194(a). Once the Trustee's service is terminated under § 1183(c), the Debtor shall make Plan payments except as otherwise provided in the Plan or in the order confirming the Plan.

If the Plan is confirmed under section § 1191(b), except as otherwise provided in the Plan or in the order confirming the Plan, the Trustee shall make all Plan payments to creditors under the Plan. The Funding Entities shall make all payments under the Plan designated herein.

**2.7.**     <u>**Post-Confirmation Management.**</u>

The Debtor's members will remain in control of managing its business activities and affairs after Confirmation of the Plan.

**2.8.**     <u>**Tax Consequences of the Plan.**</u>

Creditors and Equity Interest Holders concerned with how the Plan may affect their tax liability should consult with their own accountants, attorneys, and/or tax advisors.

**ARTICLE 3**
**<u>FEASIBILITY OF PLAN</u>**

The Bankruptcy Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

**3.1.**     <u>**Ability to Fund Plan.**</u>

Distributions under the Plan will be funded initially by cash on-hand, as well as revenue generated by liquidating the remaining inventory, as set forth hereinabove during "Phase I" of the Debtor's Plan. Thereafter, revenue generated from the Debtor's new physical facility – both from on-site consumption as well as "to-go" beer and merchandise sales, and distribution to retailers, will fund the Plan distributions to be made thereafter. The Debtor's 36-month financial projections, annexed hereto as <u>**Exhibit B**</u>, demonstrate net disposable income sufficient to make distributions required under the Plan.

Pursuant to D.N.J. LBR 3020-1, the Effective Date of the Plan shall be 30 days after the Bankruptcy Court's entry of an Order confirming the Plan. The Debtor shall file a *Notice of Occurrence of Effective Date* with the Bankruptcy Court.

12

# ARTICLE 4
## LIQUIDATION ANALYSIS.

To confirm the Plan, the Bankruptcy Court must find that all Creditors and Equity Interest holders who do not accept the Plan will receive at least as much under the Plan as such Claimants and Equity Interest holders would receive in a Chapter 7 liquidation. A liquidation analysis is attached to the Plan as **Exhibit C** (the "Liquidation Analysis"). The Liquidation Analysis reflects that general unsecured creditors holding Class 3 Allowed Claims would receive no recovery on their Claims in a Chapter 7 liquidation, after payment of Secured Claims, Administrative Expenses, and Priority Claims. However, under the Plan, general unsecured creditors are projected to recover *one hundred percent (100%) of Allowed Claims*.

# ARTICLE 5
## DISCHARGE OF DEBTOR / CODEBTOR INJUNCTION

### 5.1. 11 U.S.C. § 1141(d)(3) Not Applicable

Discharge. **If the Plan is confirmed under § 1191(a)**, on the Confirmation Date of this Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the Effective Date, to the extent specified in §1141(d) of the Bankruptcy Code; or

**If the Plan is confirmed under § 1191(b)**, as soon as practicable after completion by the Debtor of all payments due under the Plan, unless the court approves a written waiver of discharge executed by the Debtor after the order for relief under this chapter, the court shall grant the Debtor a discharge of all debts provided in section 1141(d)(1)(A) of this title, and all other debts allowed under section 503 of this title and provided for in this Plan, except any debt –

(1) on which the last payment is due after the first 3 years of the plan, or such other time not to exceed 5 years fixed by the court; or

(2) if applicable, of the kind specified in section 523(a) of this title.

### 5.2. Codebtor Injunction

**AS LONG AS THE DEBTOR IS NOT IN DEFAULT ON THE PAYMENTS CONTEMPLATED UNDER THE PLAN, ALL CREDITORS INCLUDING, WITHOUT LIMITATION, THE HOLDERS OF SCHEDULED AND FILED CLAIMS, SHALL BE ENJOINED FROM TAKING ANY OF THE FOLLOWING ACTIONS ON ACCOUNT OF SUCH CLAIMS: (A) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING AGAINST MS. QUELI OR MR. DOLLED; (B) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING IN ANY MANNER ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST MS. QUELI OR MR. DOLLED; (C) CREATING, PERFECTING, OR ENFORCING ANY LIEN OR ENCUMBRANCE AGAINST MS. QUELI OR MR. DOLLED; (D) ASSERTING A SETOFF, RIGHT OF SUBROGATION OR RECOUPMENT OF ANY KIND AGAINST ANY**

13

**DEBT, LIABILITY, OR OBLIGATION DUE TO MS. QUELI OR MR. DOLLED; (E) COMMENCING OR CONTINUING, IN ANY MANNER OR IN ANY PLACE, ANY ACTION THAT DOES NOT COMPLY WITH OR IS INCONSISTENT WITH THE PROVISIONS OF THE PLAN OR THE CONFIRMATION ORDER; OR (F) INTERFERING WITH OR IN ANY MANNER WHATSOEVER DISTURBING THE RIGHTS AND REMEDIES OF MS. QUELI OR MR. DOLLED. THE DEBTOR, MS. QUELI, AND MR. DOLLED SHALL HAVE THE RIGHT TO INDEPENDENTLY SEEK ENFORCEMENT OF THIS INJUNCTION PROVISION IN THE BANKRUPTCY COURT, OR IN THE EVENT THE BANKRUPTCY COURT DETERMINES THAT IT LACKS JURISDICTION, IN SUCH OTHER APPROPRIATE COURT. THIS INJUNCTION PROVISION IS AN INTEGRAL PART OF THE PLAN AND IS ESSENTIAL TO ITS IMPLEMENTATION. THE TERMS OF THIS INJUNCTION MAY INCLUDE SUCH OTHER TERMS, CONDITIONS, AND LIMITATIONS, AS MAY BE DETERMINED BY THE BANKRUPTCY COURT. THE RELIEF PROVIDED UNDER THIS GENERAL INJUNCTION PROVISION MAY ONLY BE MODIFIED OR TERMINATED VIA ENTRY OF A FINAL ORDER BY THE BANKRUPTCY COURT EXPLICITLY SO STATING.**

**THE DEBTOR REQUESTS THAT THE COURT MAKE A RECORD OF THE FOLLOWING SPECIFIC FACTUAL FINDINGS: (I) MS. QUELI AND MR. DOLLED SHARE AN IDENTITY OF INTEREST WITH THE DEBTOR; (II) MS. QUELI AND MR. DOLLED HAVE CONTRIBUTED SUBSTANTIAL ASSETS AND/OR LABOR TO THE DEBTOR'S OPERATIONS AND REORGANIZATION; (III) MS. QUELI AND/OR MR. DOLLED ARE GUARANTORS FOR CERTAIN CLAIMS, DEBTS, AND LIABILITIES AGAINST THE DEBTOR; AND (IV) THE PLAN PROVIDES A MECHANISM TO PAY THE CLASSES AFFECTED BY THIS INJUNCTION IN FULL. THIS GENERAL INJUNCTION PROVISION IS AN INTEGRAL PART OF THE PLAN AND IS ESSENTIAL TO ITS IMPLEMENTATION.**

## ARTICLE 6
## GENERAL PROVISIONS.

### 6.1. <u>Title to Assets.</u>

If a plan is confirmed under § 1191(a), except as otherwise provided in the Plan or in the order confirming the Plan, (i) confirmation of the Plan vests all of the property of the estate in the Debtor, and (ii) after confirmation of the Plan, the property dealt with by the Plan is free and clear of all Claims and Equity Interests of Creditors, equity security holders, and of general partners in the Debtor.

If a plan is confirmed under § 1191(b), property of the estate includes, in addition to the property specified in § 541, all property of the kind specified in that section that the Debtor

14

acquires, as well as earnings from services performed by the Debtor, after the date of commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 12, or 13 of the Bankruptcy Code, whichever occurs first. Except as provided in § 1185 of the Bankruptcy Code, the Plan, or the order confirming the Plan, the Debtor shall remain in possession of all property of the estate.

### 6.2. <u>Binding Effect.</u>

If the Plan is confirmed, the provisions of the Plan will bind the Debtor and all Creditors, whether or not they accept the Plan. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

### 6.3. <u>Severability.</u>

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

### 6.4. <u>Retention of Jurisdiction by the Bankruptcy Court.</u>

The Bankruptcy Court shall retain jurisdiction of this case with regard to the following matters: (i) to make such orders as are necessary or appropriate to implement the provisions of this Plan and to resolve any disputes arising from implementation of the Plan; (ii) to rule on any modification of the Plan proposed under section 1193; (iii) to hear and allow all applications for compensation to professionals and other Administrative Expenses; (iv) to resolve all issues regarding Claims objections, and issues arising from the assumption/rejection of executory contracts or unexpired leases, and (v) to adjudicate any cause of action which may exist in favor of the Debtor, including preference and fraudulent transfer causes of action.

### 6.5. <u>Captions.</u>

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

### 6.6. <u>Modification of Plan.</u>

The Debtor may modify the Plan at any time before confirmation of the Plan pursuant to § 1193(a). However, the Bankruptcy Court may require additional items including re-voting on the Plan.

If the Plan is confirmed under Section 1191(a), the Debtor may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated *and* (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

If the Plan is confirmed under Section 1191(b), the Debtor may seek to modify the Plan at any time only if (1) it is within 3 years of the Confirmation Date, or such longer time not to exceed 5 years, as fixed by the court, *and* (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

### 6.7. Final Decree.

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Debtor, or such other party as the Bankruptcy Court shall designate in the Plan Confirmation Order, shall file a motion with the Bankruptcy Court to obtain a final decree to close the case. Alternatively, the Bankruptcy Court may enter such a final decree on its own motion.

228702286 v1

## ARTICLE 7
## ATTACHMENTS.

The following documents accompany the Plan:

[X]    Itemized list of certain smaller-scale equipment required by Debtor to effectuate operational strategy under the Plan, annexed as **Exhibit A**.

[X]    Debtor's 36-month post-confirmation financial projections detailing revenue, income, expenses, etc., annexed as **Exhibit B**.

[X]    Liquidation analysis of hypothetical Chapter 7 liquidation versus anticipated distributions to creditors under the Plan, annexed as **Exhibit C**.

[X]    Debtor's most recent post-petition operating report filed since the commencement of the Debtor's bankruptcy case, annexed as **Exhibit D**.

228702286 v1

# ARTICLE 8
## FREQUENTLY ASKED QUESTIONS.

**What Is the Debtor Attempting to Do in Chapter 11?** Chapter 11 is the principal reorganization chapter of the Bankruptcy Code. Under Chapter 11, a debtor attempts to restructure the claims held against it. Formulation and confirmation of a plan of reorganization is the primary goal of Chapter 11. When reorganization is not feasible, however, a debtor may propose a liquidating plan under Chapter 11. The plan is the legal document which sets forth the manner and the means by which holders of claims against a debtor will be treated.

**Why Am I Receiving This Plan?** In order to confirm a plan of reorganization or liquidation, the Bankruptcy Code requires that a debtor solicit acceptances of a proposed plan, which it is doing with this Plan. If the creditors are satisfied with the information provided in the Plan and the terms of the Plan as proposed, and have voted for the Plan and returned the requisite number of ballots to counsel for the Debtor, the Bankruptcy Court may confirm the Plan as proposed by the Debtor.

**How Do I Determine Which Class I Am In?** To determine the class of your claim or interest, you must first determine whether your claim is secured or unsecured. Your claim is secured if you have a validly perfected security interest in collateral owned by the Debtor. If you do not have any collateral, your claim is unsecured. The Table of Contents will direct you to the treatment provided to the class in which you are grouped. The pertinent section of the Plan dealing with that class will explain, among other things, who is in that class, what is the size of the class, what you will receive if the Plan is confirmed, and when you will receive what the Plan has provided for you if the Plan is confirmed. Sections 2.1 and 2.2 herein list all classified classes of claimants and their types of claims.

**Why Is Confirmation of a Plan of Reorganization Important?** Confirmation of the Plan is necessary because if the Plan is confirmed, the Debtor and all of its creditors are bound by the terms of the Plan. If the Plan is not confirmed, the Debtor may not pay creditors as proposed in the Plan while the Debtor remains in bankruptcy.

**What Is Necessary to Confirm a Plan of Reorganization?** Confirmation of the Plan requires, among other things, the vote in favor of the Plan of two-thirds in total dollar amount and a majority in number of claims actually voting in each voting class. If the vote is insufficient, the Bankruptcy Court can still confirm the Plan, but only if certain additional elements are shown including that the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

**Am I Entitled to Vote on the Plan?** Any creditor of the Debtor whose claim is IMPAIRED under the Plan is entitled to vote, if either (i) the creditor's claim has been scheduled by the Debtor and such claim is not scheduled as disputed, contingent, or unliquidated, or (ii) the creditor has filed a proof of claim on or before the last date set by the Bankruptcy Court for such filings. Any claim to which an objection has been filed (and such objection is still pending) is not entitled to vote, unless the Bankruptcy Court temporarily allows the creditor to vote upon the

creditor's motion. Such motion must be heard and determined by the Bankruptcy Court prior to the date established by the Bankruptcy Court to confirm the Plan.

**When Is the Deadline by Which I Need to Return My Ballot?** The Plan is being distributed to all claim holders for their review, consideration and approval. The deadline by which ballots must be returned is <u>**May 13, 2024**</u>. Ballots should be mailed to the following address: <u>**Archer & Greiner, P.C., Attn: Douglas G. Leney, Esq., 1025 Laurel Oak Road, Voorhees, New Jersey, 08043.**</u>

**How Do I Determine When and How Much I Will Be Paid?** In Sections 2.1 and 2.2 herein, the Debtor has provided a summary of what it anticipates each class of Creditors will receive under the Plan.

228702286 v1

## ARTICLE 9
## DEFINITIONS

The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Code are used in this Plan.  The definitions that follow that are found in the Code are for convenience of reference only, and are superseded by the definitions found in the Code.

**9.1.** __Administrative Claimant__:  Any person entitled to payment of an Administration Expense.

**9.2.** __Administrative Expense__:  Any cost or expense of administration of the Chapter 11 Case entitled to priority under Section 507(a)(2) of the Code and allowed under Section 503(b) of the Code, including without limitation, any actual and necessary expenses of preserving the Debtor's estate, any actual and necessary expenses incurred following the filing of the bankruptcy petition by the Debtor-in-Possession, allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code, the allowed claim of the Trustee for fees and/or reimbursements, and any fees or charges assessed against any of the Debtor's estates under Chapter 123, Title 28, United States Code.

**9.3.** __Administrative Tax Claim__:  Any tax incurred pursuant to Section 503(b)(1)(B) of the Code.

**9.4.** __Allowed Claim__:  Any claim against the Debtor pursuant to Section 502 of the Code to the extent that: (a) a Proof of Claim was either timely filed or was filed late with leave of the Bankruptcy Court or without objection by the Debtor, and (b) as to which either (i) a party in interest, including the Debtor, does not timely file an objection, or (ii) is allowed by a Final Order.

**9.5.** __Allowed Priority Tax Claim__:  A Priority Tax Claim to the extent that it is or has become an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

**9.6.** __Allowed Secured Claim__:  Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code.

**9.7.** __Allowed Unsecured Claim__:  An Unsecured Claim to the extent it is, or has become, an Allowed Claim, which in any event shall be reduced by the amount of

any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

**9.8.** **Bankruptcy Code or Code**:  The Bankruptcy Reform Act of 1978, as amended and codified as Title 11, United States Code.

**9.9.** **Bankruptcy Court**:  The United States Bankruptcy Court for the District of New Jersey.

**9.10.** **Bankruptcy Rules**:  The Federal Rules of Bankruptcy Procedure.

**9.11.** **Cash**:  Cash, cash equivalents and other readily marketable securities or instruments issued by a person other than the Debtor, including, without limitation, readily marketable direct obligations of the United States of America, certificates of deposit issued by banks and commercial paper of any entity, including interest accrued or earned thereon.

**9.12.** **Chapter 11 Case**:  This case under chapter 11 of the Bankruptcy Code in which Forgotten Boardwalk Brewing, LLC is the Debtor and Debtor-in-Possession.

**9.13.** **Claim**:  Any "right to payment from the Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for future performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, disputed, undisputed, secured or unsecured." 11 U.S.C. § 101(5).

**9.14.** **Class**:  A category of holders of claims or interests which are substantially similar to the other claims or interests in such class.

**9.15.** **Confirmation**:  The entry by the Bankruptcy Court of an order confirming this Plan.

**9.16.** **Confirmation Date**:  The Date upon which the Bankruptcy Court shall enter the Confirmation Order; provided however, that if on motion the Confirmation Order or consummation of the Plan is stayed pending appeal, then the Confirmation

Date shall be the entry of the Final Order vacating such stay or the date on which such stay expires and is no longer in effect.

**9.17.** **Confirmation Hearing**:  The hearing to be held on _____ __, 2024 to consider confirmation of the Plan.

**9.18.** **Confirmation Order**:  An order of the Bankruptcy Court or any amendment thereto confirming the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.

**9.19.** **Creditor**:  Any person who has a Claim against the Debtor that arose on or before the Petition Date.

**9.20.** **Debtor and Debtor-in-Possession**:  Forgotten Boardwalk Brewing, LLC, the Debtor and Debtor-in-Possession in this Chapter 11 Case.

**9.21.** **Disputed Claim**:  Any claim against the Debtor pursuant to Section 502 of the Code that the Debtor has in any way objected to, challenged or otherwise disputed.

**9.22.** **Distributions**:  The property required by the Plan to be distributed to the holders of Allowed Claims.

**9.23.** **Effective Date**:  The date which is 30 days after the Bankruptcy Court's entry of an Order confirming the Plan.

**9.24.** **Equity Interest**:  An ownership interest in the Debtor.

**9.25.** **Executory Contracts**:  All unexpired leases and executory contracts as described in Section 365 of the Bankruptcy Code.

**9.26.** **Final Order**:  An order or judgment of the Bankruptcy Court that has not been reversed, stayed, modified, or amended and as to which (a) any appeal that has

been taken has been finally determined or dismissed, or (b) the time for appeal has expired and no notice of appeal has been filed.

**9.27.** **IRC**: The Internal Revenue Code

**9.28.** **Petition Date**: January 12, 2024.

**9.29.** **Plan**: This Plan, either in its present form or as it may be altered, amended, or modified from time to time.

**9.30.** **Priority Tax Claim**: Any Claim entitled to priority in payment under Section 507(a)(8) of the Bankruptcy Code.

**9.31.** **Reorganized Debtor**: The Debtor after the Effective Date.

**9.32.** **Schedules**: Schedules and Statement of Financial Affairs, as amended, filed by the Debtor with the Bankruptcy Court listing liabilities and assets.

**9.33.** **Secured Creditor**: Any creditor that holds a Claim that is secured by property of the Debtor.

**9.34.** **Trustee**: Douglas S. Stanger, the trustee appointed pursuant to 11 U.S.C. § 1183(a) and whose duties are prescribed under 11 U.S.C. 1183(b), the Plan, or the order confirming the Plan.

**9.35.** **Unsecured Creditor**: Any Creditor that holds a Claim in the Chapter 11 Case which is not a secured Claim.

Respectfully submitted,

By: */s/ Douglas G. Leney*
DOUGLAS G. LENEY
ARCHER & GREINER, P.C.
1025 Laurel Oak Road
Voorhees, NJ 08043
Tel: (215) 963-3300
Fax: (215) 963-9999
dleney@archerlaw.com
*Attorneys for Debtor*

228702286 v1